FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 04, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LESLIE MARIE MAXWELL,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 4:17-CV-05010-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 & 13. Plaintiff Leslie Marie Maxwell brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her applications for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

Motion for Summary Judgment and **DENIES** Ms. Maxwell's Motion for Summary Judgment.

## I. Jurisdiction

Ms. Maxwell filed her application for supplemental security income benefits on April 5, 2013. AR 194-99. Her alleged onset date is May 14, 2010. AR 194. Her application was initially denied on July 24, 2013, AR 133-36, and on reconsideration on October 25, 2013, AR 140-41.

Administrative Law Judge ("ALJ") Donna L. Walker held a hearing on May 19, 2015. AR 54-90. ALJ Walker issued a decision on June 17, 2015, finding Ms. Maxwell ineligible for benefits. AR 24-37. The Appeals Council denied Ms. Maxwell's request for review on December 14, 2016, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Maxwell timely filed the present action challenging the denial of benefits on February 10, 2017. ECF No. 3. Accordingly, Ms. Maxwell's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Maxwell was born in 1987. AR 35. She has a GED and has attended some college. AR 772. While she does have a variety of past jobs, none of these rise to the level of past relevant work under the Act. AR 35. Ms. Maxwell suffers from both physical and mental impairments. AR 26.

## V. The ALJ's Findings

The ALJ determined that Ms. Maxwell was not under a disability within the meaning of the Act since April 5, 2013, the date of her application. AR 24-37.

**At step one**, the ALJ found that Ms. Maxwell had not engaged in substantial gainful activity since April 5, 2013 (citing 20 C.F.R. §§ 416.971 *et seq.*). AR 26.

**At step two**, the ALJ found Ms. Maxwell had the following severe impairments: degenerative disc disease at L5-S1, lumbar spondylosis, cervical spondylosis, chronic back pain, bipolar disorder, mood disorder, panic disorder with agoraphobia, and generalized anxiety disorder (citing 20 C.F.R. § 416.920(c)). AR 26.

At **step three**, the ALJ found that Ms. Maxwell did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 26-28.

At **step four**, the ALJ found Ms. Maxwell had the following residual functional capacity: she can perform light work as defined in 20 C.F.R. § 416.967(b) including: (1) lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; (2) sit, stand, and walk for 6 hours in an 8-hour workday; (3) frequently climb ramps, stairs, ladders and scaffolds, kneel, crouch, and crawl; (4) avoid concentrated exposure to unprotected heights, moving mechanical parts, and extreme cold; (5) limit to performing simple, routine, and repetitive tasks and

simple work-related decisions; (6) capable of appropriate responses to supervisors; (7) limit to superficial contact with coworkers and supervisors and no contact with the general public; (8) limit to simple work related decisions regarding dealing with changes in the work setting; and (9) time off tasks can be accommodated by normal breaks. AR 28.

The ALJ determined that Ms. Maxwell is unable to perform any past relevant work. AR 34-35.

At **step five**, the ALJ also found that in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Maxwell can perform. AR 35-36. These include: (1) assembler, production; (2) packing, line worker; and (3) cleaner, housekeeping. AR 36. The ALJ consulted a vocational expert and the Dictionary of Occupational Titles in making this determination. *Id.*

### VI. Issues for Review

Ms. Maxwell argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly rejecting the opinions of some of Ms. Maxwell's medical providers; (2) rejecting Ms. Maxwell's subjective complaints; and (3) failing to meet her burden at step five to identify specific jobs available in significant

number which Ms. Maxwell could perform in light of her specific functional limitations. ECF No. 12 at 6.

VII. Discussion

**A. The ALJ did not err in evaluation of the opinions of Ms. Maxwell's medical providers.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings."

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted).

### a. Dr. N. K. Marks, PhD

Dr. Marks completed a psychological evaluation of Ms. Maxwell on January 23, 2015. AR 771-76. The ALJ gave great weight to Dr. Marks' opinion, with the exception of the recommendation that Ms. Maxwell would require a coach or a mentor to help her keep a job. AR 32-33, 776.

The ALJ noted that Ms. Maxwell's treatment notes indicate that her symptoms are generally controlled with medication. AR 33. Ms. Maxwell argues that the citation to her treatment notes was insufficient to support this determination because it did not pinpoint within the 30 pages of records which the ALJ relied on. ECF No. 12 at 10. A review of the records cited, however, supports the ALJ's determination, even absent a pinpoint citation. On March 12, 2013, Ms. Maxwell informed her provider that "[w]hen she was taking Seroquel, she felt as though she had more restful sleep and then she was ready to face the day." AR 740. Moreover, throughout these records broadly cited by the ALJ, most of which Ms. Maxwell was actively on medication, generally she had benign mental status examinations. *See, e.g.* AR 735, 738, 739, 741.

In addition, even if the ALJ's interpretation of the records was in error, which the Court does not find, it would be harmless error. Dr. Marks opined that

coaching would be beneficial in interpersonal relationships specifically. AR 776. The ALJ accounted for Ms. Maxwell's limitations with interpersonal skills in her residual functional capacity. AR 28. The ALJ limits her to no more than superficial contact with coworkers and supervisors, and no contact with the general public. *Id.*

### b. Judith Fredrickson

Mental health case manager Judith Fredrickson provided medical source statements on October 23, 2014, and November 25, 2014. AR 763-69. Despite being a non-medical opinion, the ALJ considered Ms. Fredrickson's opinion and assigned great weight to it because of her opportunity to observe and interact with Ms. Maxwell on numerous occasions. AR 33-34. Ms. Maxwell challenges that the restriction to 11-20 hours of recommended by Ms. Fredrickson was not properly included in the ALJ's calculation of Ms. Maxwell's residual functional capacity. ECF No. 12 at 10-11, AR 767.

As a mental health case manager, Ms. Fredrickson is considered an "other source." "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

Thus, the ALJ was not required to accept the limitations opined by Ms. Fredrickson as medical evidence. Moreover, they were contradicted by an acceptable medical source. Impartial medical expert Dr. Marian F. Martin, PhD, that Ms. Maxwell could complete a forty-hour workweek. AR 68. This opinion would be given more weight than a contradictory other source. *See generally Nguyen,* 100 F.3d at 1467.

Nevertheless, Ms. Maxwell is incorrect her assertion that Ms. Fredrickson's opinion was discounted. The 11-20 hour limitation the Ms. Fredrickson placed on Ms. Maxwell was "unless it is a job that involves no people around her and with very little stress." AR 767. When addressing Ms. Fredrickson's opinion, after qualifying it as another source, the ALJ specifically referenced the "limitation to superficial public contact and her ability to remember short and simple instructions," which were "supported by the mental status examinations." AR 34. Those considerations posed by Ms. Fredrickson were then reflected in Ms. Maxwell's residual functional capacity. The fact the ALJ did not repeat precisely the same language as Ms. Fredrickson does not indicate the restrictions did not factor into her decision.

**B. The ALJ did not err in the determination of Ms. Maxwell's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ found that "[d]espite [Ms. Maxwell's] impairment, [she] has engaged in a somewhat normal level of daily activity and interaction." AR 32. The ALJ cited to a variety of activities of daily living that do not support her allegations

of total disability. These include housework, cooking, grocery shopping, numerous social engagements, college courses, and caring for her child. AR 32.

This is supported by the record. Ms. Maxwell informed Dr. Marks on January 23, 2015, that she had completed 32 credits of college credits and was still enrolled. AR 772. She also reported that she could take care of all of her activities of daily living, that she does drive and has a valid license, that she spends her days on the internet job-searching and on Facebook, that she takes her son to and from school, and that she likes to clean house. *Id.* A mental health evaluation on March 20, 2014, stated that she and her son had been "getting out quite a bit exploring new parks and doing various activities." AR 736. The record also includes multiple references to "indiscriminate" sexual activity, which is contradictory to her assertions that she cannot be around people. AR 735-36. Further, Ms. Maxwell herself stated that she attends church, family barbecues, birthday parties, sporting practices and events for her son, and works closely with her son's speech therapist on a regular basis. AR 248.

The ALJ's finding that Ms. Maxwell's activities of daily living was inconsistent with her subjective symptom testimony is strongly supported by substantial evidence in the record. The Court finds no error.

//

//

### C. The ALJ did not fail to meet her burden at step five.

Ms. Maxwell argues that the ALJ erred at step five because the hypothetical posed to the vocational expert was incomplete. To reach this conclusion, Ms. Maxwell attempts to reargue the same issues in her challenge to the ALJ's treatment of the opinions of Dr. Marks and Ms. Frederickson. The Court has already found no error in the ALJ's weight assigned to these opinions. *See supra* at 9-12. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding, on which the hypothetical was based, did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Thus, the Court finds no error at step five.

### VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

*///*

*///*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

3.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 4th day of December, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 16